UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION



| | | |
|---|---|---|
| VIRGINIA WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:04-CV-258-C |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION

Plaintiff Virginia Williams seeks judicial review of a decision of the Commissioner of Social Security, denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

**I.    Statement of the Case**

Before applying for benefits with the Social Security Administration, Williams worked as a meat wrapper at a grocery store and as a part-time shipping and receiving clerk at a craft store. (Tr. 24.) Her employment ended on May 5, 2000, when she sustained injuries from an accident that occurred when a co-worker dropped a fifty-pound box of Christmas wreaths on her head. (Tr. 26, 109, 173.) She applied for DIB and SSI on

June 3, 2002, claiming she was disabled and could not work because of pain in her neck and lower back. (Tr. 81-83, 109, 320-23.)

An Administrative Law Judge (ALJ) held a hearing and thereafter issued a decision denying her applications for benefits. (Tr. 9-20.) His decision to deny benefits was made at the fifth step of the sequential disability evaluation process and was based on his findings that she retained the residual functional capacity to perform light work with a sit/stand option and that there were jobs in the national economy that she could perform. (Tr. 17-18.) The Appeals Council denied review and the ALJ's decision became the Commissioner's final decision. (Tr. 4-6.)

## II. Points of Error

Williams challenges the Commissioner's decision on three grounds. She contends the ALJ made incorrect findings of fact, failed to properly assess her pain, and failed to accord sufficient weight to her treating physicians' opinions.

## III. Standard of Review

This court's review of the Commissioner's decision is limited. The court's sole role is to determine whether the Commissioner's decision is supported by substantial evidence and whether proper legal standards were used to evaluate the evidence. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citation omitted). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's

decision, and if the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Id.*

## IV. Medical Evidence

The records indicate that Williams suffered from broken teeth; a concussion; pain in her neck, back, right shoulder, and right leg; and occasional headaches after her co-worker dropped the fifty-pound box on her head on May 8, 2000. (Tr. 137, 141, 149, 154, 161-62.) Two days later on May 10, 2000, a Computed Tomography (CT) scan of her head was normal and a CT scan of her neck showed normal disc space alignment, normal density, and the absence of fracture and disc bulging. (Tr. 173-75.) On June 12, 2000, a Magnetic Resonance Imaging (MRI) suggested biceps tendonosis and degenerative changes to the acromioclavicular joint. (Tr. 179.) On June 28, 2000, a CT scan of her lumbar spine showed minimal disc bulge at L3-4 and L5-S1, degenerative changes at L3-4, no fracture, and no spinal or foraminal stenosis. (Tr. 169-71.)

Williams was treated by B. Misra, M.D., after the accident and throughout the remainder of 2000. (Tr. 144, 152.) Soon after the accident, Dr. Misra noted that Williams had some spasm in her neck but had regained 90 percent movement in the area and thereafter noted that she had full movement in her cervical spine and back. (Tr. 156, 159-60.) On May 26, 2000, he released her to light duty work. (Tr. 156.)

The medical records show that Dr. Misra treated Williams with medication, conservative treatment, and physical therapy which improved her conditions. (Tr. 124, 126,

128, 141.) However, Dr. Misra's examination notes indicate that she continued to complain of occasional headaches and pain in her right shoulder, neck, and back and that she complained of pain in her right shoulder most often. (Tr. 128, 144, 149, 153.)

In January 2001, Williams began treatment under Nathan Wilson, M.D., and in April 2001 underwent a subacromial decompression for her right shoulder. (Tr. 200, 204.) The procedure was successful in resolving the symptoms in her shoulder. (Tr. 195, 197-98.) However, she continued to complain of pain in other areas, particularly in her lower back, and Dr. Wilson focused his treatment on this area, noting that her back pain was worse than her neck pain. (Tr. 197-99.) On January 18, 2002, Dr. Wilson noted that x-rays of Williams' spine were "fairly normal" and that an MRI showed degenerative changes with no evidence of herniation or stenosis. (Tr. 196.) He noted that Williams' neck and back were symptomatic but that her back pain improved with epidural steroid treatment; therefore, he decided to obtain an MRI of her cervical spine and order epidural steroid treatment for that area as well. (*Id.*)

The MRI of Williams' cervical spine revealed that she had congenital spinal stenosis and straightening of the spinal curvature, which indicated that the problem was present before the accident on May 8, 2000, despite the absence of symptoms before that date. (Tr. 195, 214, 259.) Thereafter, Dr. Wilson described Williams' cervical area as the "most symptomatic" and treated the pain with epidural steroid injections and discograms. (Tr. 184-85, 191, 195, 211.)

On January 24, 2003, Dr. Wilson recommended a three-level fusion but Williams' insurance company rejected his recommendation and refused to approve the surgery and refused to cover further epidural steroid injections, apparently because Williams' spinal stenosis was congenital. (Tr. 186, 260.)

On July 23, 2002, Gerald Hill, M.D., assessed the level of Williams' impairment for Dr. Wilson. (Tr. 272-76.) His impression was that Williams had cervical and lumbosacral strain with un-verified radicular symptoms, congenital spinal stenosis, mild degenerative disc disease in her lower back without herniation, and postoperative impingement syndrome in her right shoulder with mild chronic residual shoulder pain. (Tr. 275.) He indicated that she was at maximum medical improvement and assigned a 14 percent whole person impairment, which was based on a five percent impairment of the lumbosacral area, a 5 percent impairment of the cervical area, and a 4 percent impairment in right shoulder range of motion. (Tr. 275.) An examination by a consulting physician on September 9, 2002, substantiated Dr. Hill's rating. (Tr. 278-81.)

V.     **Discussion**

   A.     *The ALJ did not make incorrect findings of fact that would require remand*

Williams contends that the ALJ's decision is fatally defective because he found that she was "clinically assessed as physically capable of performing work activities requiring less than heavy activities such as light and sedentary work." (*See* Tr. 16.) She argues that only non-examining physicians provided an opinion regarding the types of work she could perform and that Dr. Wilson was of the opinion that she had no work ability.

5

The ALJ did not cite non-existent evidence as Williams claims; however, he did cite incorrect exhibit page numbers for the evidence to which he referred. The record shows that as early as July 28, 2000, Dr. Misra indicated his belief that Williams was capable of performing part-time clerical jobs that would not require lifting. (Tr. 146; *see also* 142, 144.) On a later but unspecified date he indicated that she could "start light duty." (Tr. 156.)

Williams also contends that the ALJ made incorrect findings of fact in regard to medical evidence related to physical examinations and assessments. She first claims that the ALJ erred in finding that she retained the ability to move her upper extremities normally and that she retained near normal sensory, reflex, and motor functioning within her extremities. (*See* Tr. 16.) Once again, however, it appears that the ALJ merely cited incorrect exhibit page numbers and that evidence in the record supports his findings. For example, examining physician, Chris McGee, M.D., reported that motor examination of Williams' upper extremities was "5/5 throughout" with the exception of hand/grip strength as well as finger spread, which was reported as "4/5." (Tr. 307.) Dr. Wilson indicated that her upper and lower extremities were "neurovascularly intact" and noted normal deep tendon reflexes in her upper and lower extremities, the absence of atrophy, and normal sensation and sensory reception. (Tr. 195.)

Williams also claims the ALJ cited non-existent evidence that showed that she was capable of moving her neck and back well enough to touch her chin to her chest, to bend over to within 12 inches from touching the floor, and that she walked independently. However, Jaye Cole, M.D., reported that upon examination Williams was able to "flex her

chin to her chest" and "flex actively and passively to where her hands [were] about 12 inches off the floor . . .." (Tr. 280.) In fact, Dr. Hill reported that while assessing her impairment rating, Williams bent forward to within "about eight inches of the floor." (Tr. 275). Finally, there is evidence that Williams walked independently and without ambulation aids. Dr. Wilson indicated repeatedly that Williams had normal gait without an assistive device (*see* Tr. 197-98), and indicated on April 11, 2003, that she "ambulat[ed] without assistive device" (Tr. 183). In fact, according to Dr. Wilson, Williams was walking for exercise in May 2002. (Tr. 193.)

As the foregoing demonstrates, although the ALJ may have erred by citing incorrect exhibit page numbers, there is support for his findings of fact in the record. Thus, contrary to Williams' contentions, the ALJ's errors are not fatal. Administrative error is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (error is harmless when it does not "render the ALJ's determination unsupported by substantial evidence and does not prejudice [the claimant's] substantive rights"). Such errors do not require remand when it is clear that remand for the correction of such an error would not change the ALJ's decision. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (remand not required because it was "inconceivable that the ALJ would have reached a different conclusion" in absence of the error).

>    B.   *The ALJ properly assessed Williams' pain and her credibility in regard to her complaints of pain*

Williams claims that the ALJ failed to properly analyze her pain and failed to make adequate credibility findings. These arguments must be rejected. Although it is certainly well established that pain may be disabling or prevent the performance of certain jobs," *Haywood v. Sullivan*, 888 F.2d 1463, 1470 (5th Cir. 1989) (citation omitted), the mere existence of pain does not establish disability, *Owens v. Heckler*, 770 F.2d 1276, 1281 (5th Cir. 1995) (citation omitted), and the fact that a claimant may experience some pain or discomfort while working does not compel a finding of disability, *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir. 1984).

However, because pain may be disabling, the ALJ must consider the claimant's subjective complaints of pain by determining the truthfulness and reliability of the allegations and by indicating "the credibility choices made and the basis for those choices." *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1981). Thus, the ALJ must weigh the objective medical evidence and assign articulated reasons for discrediting the claimant's subjective complaints of pain. *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (citation omitted). This credibility analysis requires consideration of (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage and side effects of any medication the claimant takes to alleviate his pain or other symptoms; (5) treatment, other than medication, the claimant may receive or has received for relief of his pain or other

8

symptoms; (6) any measure the claimant uses or has used to relieve his pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions caused by pain or other symptoms. 20 C.F.R. §§ 404.1529(c), 416.929(c) (2004); S.S.R. 96-7P, 1996 WL 374186. The ALJ's analysis must include findings that are "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7P, 1996 WL 374186.

In this case, the ALJ acknowledged Williams' allegations of pain and weighed those allegations under the regulatory factors, as he was required to do. (Tr. 14-18.) He considered the location, frequency, and intensity of her pain, as well as aggravating factors (Tr. 14-14); he considered the treatment prescribed for her pain, including surgical intervention for her shoulder, which resolved the pain in her shoulder, injections for her neck and back condition, which resolved problems with pain and problems with limited range of motion (Tr. 15-16), and prescription pain medications and their side-effects (Tr. 15); he considered evidence regarding the functional limitations from her pain and her functional abilities (Tr. 16); and considered her testimony regarding her daily activities as well as her appearance and demeanor at the hearing (Tr. 15-16).

The responsibility for determining whether pain is disabling lies with the ALJ and his decision in this regard is entitled to considerable judicial deference and will be upheld if supported by substantial evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (citations omitted). Even in a case in which the evidence indicates a mixed record

concerning a claimant's medical problems and the limitations on his ability to work, it is the ALJ's responsibility to weigh the evidence; the court is then charged with determining whether there is substantial evidence in the record as a whole to support his determination. *Id.* at 523 (citation omitted). Thus, courts often look beyond the ALJ's decision, evaluating the record as a whole to determine whether there is evidence, though not cited by the ALJ, that supports his credibility determination. *See, e.g., Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995); *Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994); *see also, Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988).

Further, "an absence of objective factors indicating the existence of severe pain – such as limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition – can itself justify" an ALJ's determination that a claimant's pain is not disabling. *Hollis*, 837 F.2d at 1384 (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)). Examination notes from the physicians in the record indicate an absence of the foregoing objective factors. (*See, e.g.,* Tr. 159, 274, 280-81.) Thus, under the deferential standard of review and in light of the evidence in this case, it must be determined that substantial evidence supports the ALJ's decision. As the ALJ found, the evidence does not substantiate Williams' claims that her pain is so debilitating as to preclude all work. (*See, e.g.,* Tr. 272, 280-81, 300.)

C.  *The ALJ properly assessed treating physicians' opinions*

Williams argues that the Commissioner is required to consider all evidence from treating physicians and must present good cause for rejecting such evidence. She cites

evidence from treating physicians regarding her pain and Dr. Wilson's opinion that she would not have a chance of returning to work without the surgery her insurance company denied. (Tr. 182.)

As an initial point, opinions such as that provided by Dr. Wilson are characterized as legal conclusions regarding disability rather than medical opinions. *Frank,* 326 F.3d at 620. Therefore, an ALJ's failure to give reasons in his decision for rejecting such opinions is not reversible error. *Barajas,* 738 F.2d at 645. In regard to the opinions regarding Williams' pain, the ALJ indicated that he considered all the medical evidence and recognized that Williams experienced pain but found that her symptoms were not totally disabling. (Tr. 16.) There is no requirement that an ALJ discuss each piece of evidence and the fact that the ALJ in this case did not specifically reject each physician's comments regarding pain does not compromise his ultimate decision. *See Greenspan v. Shalala,* 38 F.3d 232, 238 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995) (the ALJ's "power to judge and weigh evidence includes the power to disregard" such evidence).

## VI. <u>Recommendation</u>

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the Commissioner's decision and dismiss Williams' complaint with prejudice.

## VII. <u>Right to Object</u>

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy

of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: May 31, 2005.

NANCY M. KOENIG
United States Magistrate Judge